UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN KAUFMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:10-CV-466-JD |
| | ) |
| CRST LINCOLN SALES, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

After he was terminated in May of 2010, plaintiff John Kaufman sued his former employer, defendant CRST Lincoln Sales, Inc. ("CRST"), alleging violations of various employment laws. About one year later, Kaufman filed for Chapter 7 bankruptcy. In his bankruptcy petition, Kaufman swore under penalty of perjury that he had no interest in any pending litigation, an assertion which was obviously incompatible with the existence of this lawsuit. Based on that petition, Kaufman obtained a discharge. CRST found out. In a motion for summary judgment filed on August 28, 2012, CRST moved for summary judgment, arguing judicial estoppel and lack of standing, as the real party in interest is the bankruptcy estate. The motion was briefed in full, and the court took it under advisement. The court has jurisdiction pursuant 28 U.S.C. §§ 1331 and 1441. Having considered the law, the facts of the case, and the arguments made by the parties, the court agrees with CRST's assessment of the case to the extent that Kaufman does not have standing to litigate the suit himself. Consistent with the dictates of the Rules of Civil Procedure, however, the court will give the bankruptcy trustee an opportunity to formally intervene before granting summary judgment and dismissing the suit. Proceedings on the motion are therefore temporarily **STAYED** as indicated herein.

1

**BACKGROUND**

None of the facts of this case are in dispute. On November 24, 2010, Kaufman sued his former employer, CRST, alleging violations of employment laws in conjunction with his termination in May of the same year. In the complaint [DE 1], Kaufman includes four allegations: (1) that CRST wrongfully terminated him for requesting leave under the Family and Medical Leave Act; (2) that CRST violated the Employee Retirement Income Security Act by unlawfully interfering with his obtainment and receipt of benefits due thereunder; (3) that CRST terminated Kaufman for filing a claim for workers' compensation benefits in violation of the public policy of the State of Indiana; and (4) that CRST violated the Indiana Wage Claims Payment Statute by failing to pay him for his two accrued vacation days. [DE 1 at 8-19]. In response to CRST's interrogatories, Kaufman estimated that his claimed damages with respect this action are at least $57,523.00, plus interest. [DE 50-1 at 25]. In addition to that amount, Kaufman stated his intent to seek liquidated damages with respect to lost benefits of employment; attorney fees and expenses; punitive damages; emotional distress damages; and damages related to "decreased employability." [DE 50-1 at 25].

About one year later, on November 11, 2011, Kaufman filed a Chapter 7 voluntary petition in the United States Bankruptcy Court for the Northern District of Indiana, claiming $47,586.00 in assets and $216,667.37 in liabilities, with $7,000.00 owing to creditors holding secured claims. [DE 50-1 at 29-34, 45]. Schedule B of the form Kaufman filed, on which he was instructed to identify his personal property, specifically asked him to list "other contingent and unliquidated claims of every nature." [DE 50-1 at 33]. Kaufman marked "NONE." That was false, obviously, because this lawsuit was pending at the time, a fact of which Kaufman must have been aware. Kaufman had a lawyer in the bankruptcy proceeding, so he cannot attribute the false answer to the legal jargon about "contingent and unliquidated claims." *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 411 (7th Cir.

2006). But Kaufman was at least consistent, if not accurate. In the Statement of Financial Affairs section of his bankruptcy petition, Kaufman did not list this lawsuit when asked to identify all suits to which he was a party within the year preceding his bankruptcy filing. [DE 50-1 at 34]. That, too, was obviously misleading.

Kaufman signed his Bankruptcy Petition under penalty of perjury [DE 50-1 at 31], and he was granted a discharge under section 727 of Title 11. [DE 50-1 at 35]. Kaufman confirmed at his deposition, taken for this case on August 7, 2012, that the bankruptcy was terminated and that he had in fact received a discharge. [DE 50-1 at 49]. That was technically wrong – the proceeding remained open because a creditor objected to the discharge, and the proceeding in fact remains open today. *See In re Kaufman*, Case No. 11-34396 (N.D. Ind. Bankr. 2013).

On August 28, 2012, CRST moved for summary judgment in this case. [DE 49]. CRST argues that the equitable doctrine of judicial estoppel precludes Kaufman from doing exactly what he did here. Specifically, CRST contends that, since Kaufman failed to disclose the existence of this lawsuit during his bankruptcy proceedings, he should be barred from pursuing his claims now. [DE 50 at 4-9]. To allow him to continue and possibly succeed on these claims would be to essentially reward his lie; he would enjoy the benefits of an asset he has successfully hidden from his creditors. In the alternative, CRST argues that the bankruptcy trustee is the real party in interest in this case and that Kaufman does not have standing to pursue it himself.

Around the time CRST filed its motion for summary judgment, something set off a flurry of activity on the plaintiff's side. According to the plaintiff's response brief [DE 54 at 2], Kaufman's attorney provided notice of this lawsuit to Kaufman's bankruptcy attorney and to the bankruptcy trustee in August and October of 2012, respectively, but no evidence whatsoever of either notification was ever submitted. On October 24, 2012, Kaufman's attorney managed to obtain an

appointment as "special counsel" in the bankruptcy proceeding. [DE 54-2; No. 11-34396 DE 70]. The bankruptcy court's order contains no mention at all of the purpose of the appointment; according to the trustee's motion precipitating the order, Kaufman's attorney was appointed to manage a "personal injury" action, but no further detail was included. Finally, Kaufman's attorney also assured this court that no dismissal on judicial estoppel grounds was warranted because Kaufman *intended* to amend Schedule B of his bankruptcy petition. [DE 54 at 3].

More than four months have passed since Kaufman "intended" to amend Schedule B of his bankruptcy petition, and it is indisputable he has not done it. He has not done it, *despite* the facts that he is obviously aware of the problem and that a dispositive motion has been filed concerning that exact deficiency. Thus, his (former) creditors still cannot reach his interest in this suit. Moreover, despite the assurances of plaintiff's counsel that he would be appointed to pursue this litigation on behalf of the trustee rather than on Kaufman's behalf, months later, the trustee *still* has not intervened, despite indisputable evidence that the trustee is aware of the suit. The only individual pursuing this lawsuit is Kaufman himself.

## STANDARD OF REVIEW

The general standard is that summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of [a] genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party then bears the burden of demonstrating that a

4

genuine issue of material fact *does* exist, or that the movant is otherwise not entitled to the judgment it seeks. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). The issues presented in CRST's motion are particularly appropriate for resolution at this stage of the proceeding. Not only are the facts material to these issues undisputed, but the doctrine of judicial estoppel sounds in equity, and "[g]enerally speaking, questions sounding in equity are for a judge to decide[.]" *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Additionally, the second issue is one of standing, and "[w]hether a party has standing to bring a 'case or controversy' before the court is a question of law[,]" which is also resolved by the court. *Arreolo v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007)).

**DISCUSSION**

There are two related issues to address. The first is the issue of judicial estoppel. CRST contends that, since Kaufman failed to disclose the existence of this lawsuit during his bankruptcy proceedings, he should be barred from pursuing his claims now. [DE 50 at 4-9]. In response, Kaufman argues that he "intends to reconcile any alleged inconsistent statements" by amending his Bankruptcy Petition to include his claims against CRST. [DE 54 at 5].

The second issue is the issue of standing. CRST argues that, since the bankruptcy trustee – and not Kaufman – is the real party in interest in this case, Kaufman does not have standing to pursue the litigation on his own behalf. In response, Kaufman ultimately concedes that the bankruptcy trustee is the real party in interest, but he argues that the standing issue is alleviated because his attorney is "special counsel," appointed by the bankruptcy trustee to pursue this claim on behalf of the bankruptcy estate. [DE 54 at 4-5].

The three factors that generally guide a court's decision whether to apply judicial estoppel

5

do appear to be met in this case. Kaufman also clearly lacks standing to continue this litigation. And the Court is mindful of the creditors who were deceived by Kaufman's inaccurate statements and that, should the bankruptcy trustee intervene, they have the opportunity to recover any award which Kaufman might be entitled to on the underlying claims. Accordingly, the court will give the bankruptcy trustee a chance to formally intervene before granting the motion for summary judgment and dismissing the suit.

### A.     Judicial Estoppel

"A debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." *Bisek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006). The equitable doctrine is designed to "prevent the perversion of the judicial process." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). The Supreme Court has been careful to emphasize that the standard for invoking judicial estoppel is "not reducible to any general formulation of principle[.]" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Still, there are three factors which typically inform the decision-making process. *Id*. Those factors are:

> [F]irst, that a party's later position must be clearly inconsistent with its early position; second, that the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and third, that the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*In re Knight-Celotex, LLC*, 695 F.3d 714, 721-22 (7th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51) (quotation marks omitted). "By making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." *Cannon-Stokes*, 453 F.3d at 448 (quoting

6

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993). Moreover, by inducing debtors to be honest in their bankruptcy filings, the doctrine of judicial estoppel "will assist creditors in the long run . . . and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers." *Id*.

Applying the factors to this case, the court notes, first, that Kaufman's two positions are clearly incompatible. Swearing under penalty of perjury that one has no interest in pending litigation simply is not consistent with pursuing one's interest in pending litigation. It is also worth noting that, at this point at least, the inconsistent positions are clearly not inadvertent. "A debtor's failure to disclose claims is inadvertent only when he is either unaware of the claims or has no motive to conceal the claims." *Wiggins v. Citizens Gas & Coke Utility*, No. 1:03-CV-1882, 2008 WL 4530679 at *2 (S.D.Ind. Oct. 7, 2008) (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600-01 (8th Cir. 2005); *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286-88 (11th Cir. 2002); *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418-19 (3rd Cir. 1988)). Put another way, "To establish that [his] failure to disclose was inadvertent, [plaintiff] may prove either that [he] did not know of the inconsistent position or that [he] had no motive to conceal it from the court." *Jethroe*, 412 F.3d at 600-01. He must show not that he was unaware that he had a duty to disclose his claims but that, at the time he filed his bankruptcy petition, he was unaware of the facts giving rise to them. *Id*. at 601. Not only is it clear that Kaufman has a motive for this misrepresentation, it is clear that he was aware of the facts giving rise to this suit when he lied on his bankruptcy petition: this suit had already been filed. For that matter, he has indisputably been aware of the inconsistency at least since CRST first raised the issue several months ago. There is no inadvertence or mistake, here.

Second, as of the time of the initial misrepresentation, and in fact up through the present time, Kaufman has been entirely successful in persuading the bankruptcy court to adopt his inaccurate statement. True, the bankruptcy proceeding remains open due to a creditor's objection, but this court has reviewed the objection and it has nothing to do with the existence of this lawsuit. It was a quibble about the amount of a small debt, and it was stricken. The fact of the matter is that Kaufman indisputably obtained a discharge based on his misrepresentation, and he continues to reap the benefits of that discharge while he continues to refuse to correct that misrepresentation. It makes no difference that his debts have not yet been *permanently* wiped away. "[A] debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future." *Williams v. Hainje*, 375 Fed. Appx. 625, 628 (7th Cir. 2010); *see also Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (judicial estoppel applies where party received temporary benefit of an approved class settlement); *Krystal Cadillac–Oldsmobile GMC Truck v. General Motors Corp.*, 337 F.3d 314, 319 n. 6 (3d Cir. 2003) (affirming the application of judicial estoppel to an undischarged debtor); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 784 (9th Cir. 2001) (judicial estoppel was appropriate even though the debtor's discharge had been vacated); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 415 (3d Cir. 1988). Kaufman's several-month-old, unsubstantiated promise to fix it is useless, especially without any real action. "The cases are uniform that correction action taken only after being 'caught' and compelled to do so by one's opponent is too late; it is not a defense to the application of judicial estoppel." *Wiggins*, 2008 WL 4530679 at *3; *see also Scoggins v. Arrow Trucking Co.*, 92 F.Supp.2d 1372, 1376 (S.D.Ga. 2000) ("[plaintiff] should not be permitted to duck his bankruptcy court disclosure obligation, then 'fess up' without consequence once exposed by his adversary"

8

(footnote omitted)).

Third, Kaufman would undeniably gain an unfair advantage on his adversaries if he is permitted to get away with this. He gained an advantage over his creditors in the bankruptcy proceeding when he concealed this lawsuit in obtaining a discharge, and he will gain a further advantage if he recovers in this suit, thereby gaining and keeping a significant asset which should have been included in the bankruptcy estate and distributed to creditors.

Thus, the factors warranting judicial estoppel appear to be met. The court is not inclined to allow Kaufman to proceed in this lawsuit and to potentially obtain a reward for his dishonesty. Moreover, the court has waited long enough, without success, for Kaufman's promise to amend his disclosures to come to fruition. Still, dismissing the case outright on judicial estoppel grounds can have "adverse effects on third parties: the creditors." *Bisek*, 440 F.3d at 413. By hiding assets from the creditors, Kaufman has harmed the creditors by preventing them from recovering on their debts. *Id.* But applying judicial estoppel to permanently bar Kaufman's claim would not remedy that defect. To the contrary, it would deny "creditors even the right to seek some share of the recovery." *Id*. The creditors "have not contradicted themselves in court[,]" yet they are "hurt a second time" by the debtor's deception if the cause of action is conclusively barred. *Id*. Courts often avoid that result by resolving such cases based on the standing of the self-contradicting debtor to pursue the claim, rather than barring the claim itself on judicial estoppel grounds. *Id*.

**B.   Standing**

As a clear-cut matter of law, pre-bankruptcy claims are the property of the bankruptcy estate, not the debtor. 11 U.S.C. § 541(a); *Biesek*, 440 F.3d at 413. A trustee may abandon any such legal claims, but the bankruptcy code requires several formal procedures to be followed, including notice and hearing requirements, for abandonment to be effective. *See* 11 U.S.C. § 554(a)-(c). Nothing like

that has taken place in this case, and Kaufman himself concedes that the bankruptcy estate is the real party in interest in this litigation. [DE 54 at 4-5]. It is indisputable that the bankruptcy trustee has not intervened in this case, nor has anything at all taken place in this case which would formally show that the bankruptcy estate's interest is represented. Kaufman himself is the only plaintiff on the caption, and he agrees, at this point, that he has no standing to pursue the claim as an individual.

In similar circumstances, and where the application of judicial estoppel might unfairly harm "innocent" creditors, the Seventh Circuit has advocated resolving these cases on the standing issue. *Biesek*, 440 F.3d at 413; *Cannon-Stokes*, 453 F.3d at 448 ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit. Moreover, as a technical matter the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims[.]"). Kaufman only makes two arguments against dismissal for lack of standing: (1) that his attorney has been appointed "special counsel" to pursue the bankruptcy estate's interest in this litigation; and (2) that his claim for reinstatement, at least, remains his property and not the property of the bankruptcy estate, and that he may therefore pursue it as an individual.

The first point is largely irrelevant. To the extent that Kaufman's attorney has in fact been appointed special counsel to the bankruptcy estate [DE 54-2], Kaufman's attorney may be able to continue to pursue this litigation on behalf of the bankruptcy estate, *if* the bankruptcy estate had intervened. But it has not. Kaufman's attorney has presented no legal authority for why an attorney without a client should be able to pursue a claim, at the expense of the court and the opposing party, allegedly on that non-appearing client's behalf. Moreover, even if the trustee *had* intervened, and even if Kaufman's *attorney* was therefore able to stay in the litigation on the trustee's behalf, Kaufman *himself* would still lack standing to be here. He would still have no interest in the suit, and he would still have to be dismissed. The fact that his attorney now arguably represents somebody

10

else does nothing to save his case. For that matter, it might create a conflict of interest.

The second argument, that the claim for reinstatement remains Kaufman's alone, is no more helpful to Kaufman's case. In support, Kaufman cited an Eleventh Circuit case, *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003), which held that the doctrine of judicial estoppel did not prohibit a plaintiff from pursuing an injunctive claim for reinstatement, despite the plaintiff's failure to list the claim in a bankruptcy proceeding. Id. at 1297. Judicial estoppel is, at its core, about preventing litigants from unfairly harming their opponents, and the *Barger* decision appears to ascribe to the "no harm, no foul" approach – since the claim for reinstatement had no monetary value, the failure to list it did not harm the creditors, and judicial estoppel was not warranted. *See also Matthews v. Potter*, 316 Fed.Appx. 518, 523-24 (7th Cir. 2009) (citing *Barger* for the same rule, again in a judicial estoppel context). But none of that has any bearing on the issue of *standing*, which is a matter of flat legal requirements, not of the equitable balancing of harms. In *Barger*, the Eleventh Circuit found no standing defect, due to the procedural history of the case. Similarly, in *Matthews*, the Seventh Circuit found that the plaintiff had standing because the trustee had abandoned the claims. 316 Fed.Appx. At 521-22.

In this case, there clearly *is* a standing problem. Under 11 U.S.C. § 541(a), "a debtor's bankruptcy estate includes all his legal *and equitable* interests in property as of the commencement of the bankruptcy case." *Fowler v. Shadel*, 400 F.3d 1016, 1018 (7th Cir. 2005) (emphasis added). In fact, "every conceivable interest of the debtor . . . is within the reach of § 541." *In re Yonikus*, 966 F.2d 866, 869 (7th Cir. 1993). Judicial estoppel may be inapplicable to the portion of the lawsuit seeking reinstatement because the creditors were not hurt by Kaufman's failure to list it, but that does not change the well-settled reality that the interest belongs to the trustee. In the absence of any evidence of abandonment by the trustee, and where the bankruptcy proceeding remains open,

11

Kaufman lacks standing to pursue the equitable remedy of reinstatement, or any other aspect of this suit, because all of his interests in the suit are the property of the bankruptcy estate under § 541.

The only remaining question is what to do about it. As the Eleventh Circuit noted in *Barger*, Federal Rule of Civil Procedure 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." It also provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." The bankruptcy estate is the real party in interest, and both of the parties, as well as the trustee, were made aware of the standing issue no less than five months ago. Still, Kaufman *was* the real party in interest when this suit was filed, which means the transfer of interest to the trustee is controlled by Federal Rule of Civil Procedure 25(c). Pursuant to that rule, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom interest is transferred to be substituted in the action or joined with the original party." The standing issue has been brought to the court's attention by motion, and the court will give the trustee the opportunity to intervene at this time.

## CONCLUSION

In conclusion, all other things being equal, this case would be a good candidate for application of judicial estoppel, since Kaufman's conduct satisfies the three factors typically analyzed with respect to that issue. But, especially because the bankruptcy proceeding is still open, the Court believes it appropriate to give the bankruptcy trustee a limited opportunity to intervene, should he so choose, on behalf of the creditors. Moreover, the larger problem is that Kaufman lacks

12

standing to litigate this suit. It is the property of the bankruptcy estate. Rather than grant CRST's motion for summary judgment outright on standing grounds, the Court will give the bankruptcy trustee a formal opportunity to intervene as the real party in interest, consistent with the dictates of Fed. R. Civ. P. 25(c). Since the trustee has already had several months' notice of the issue, not much time is necessary. Proceedings on CRST's motion for summary judgment are hereby **STAYED** until two weeks (14 days) from the date this order issues. If the bankruptcy trustee does not move to intervene as the real party in interest before that date, the motion for summary judgment will be granted and the case dismissed. In any case, Kaufman himself will be dismissed from the lawsuit on the date indicated, as he has no personal interest in the result.

SO ORDERED.

ENTERED: March 11, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court